UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN H. SUNUNU and <br><br> VICTOR H. FRANK, Jr., <br><br>            Plaintiffs, <br><br> v. <br><br> PHILIPPINE AIRLINES, INC. <br><br>            Defendant. | Civil Action  98-01192 (HHK) |

**MEMORANDUM OPINION AND ORDER**

John H. Sununu and Victor H. Frank, Jr. (collectively, "plaintiffs") bring this action against Philippine Airlines, Inc. alleging breach of contract, unjust enrichment, and fraud.  Before the Court is Philippine Airlines' motion to dismiss for failure to state a claim upon which relief may be granted [#14].  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted in part and denied in part.

**I.  BACKGROUND**

In 1996, Philippine Airlines entered into an Aircraft Services Agreement with World Airways in which it agreed to lease four aircraft from World Airways from June 15, 1996 until November 15, 1997.  The agreement committed Philippine Airlines to use the aircraft for a minimum number of block hours each month and to pay $6,000 per block hour.  In the spring of 1997, Philippine Airlines sought to negotiate a reduction in the payments remaining due under this agreement, and engaged plaintiffs to help it do so.  On or around June 27, 1997, Philippine Airlines and plaintiffs entered into a contract that provided that Philippine Airlines would pay

plaintiffs $50,000 to meet with World Airways' Chairman. In addition, the contract specified that plaintiffs would be paid a "Success Fee" of four percent of Philippine Airlines' savings "if [plaintiffs] are able to reach a Settlement to reduce the remaining obligation of PAL [Philippine Airlines] to WA [World Airways] in accordance with either one of the following two offers [by July 11, 2007]." Compl. Ex. 1. The two offers were as follows:

> i. WA to accept return of four aircrafts by July 1997 and PAL to pay USD$1,000 for every hour remaining of the minimum guaranteed utilization of the aircraft up to November 15, 1997; or
>
> ii. WA to reduce the lease rate on the four aircraft to USD$4,000 per hour reckoned from June 01, 1997 to the end of the lease on November 15, 1997.

*Id*. The contract stated that the "Settlement should occur before . . . the 11th day of July, 1997," and that the "Settlement shall be deemed to occur on the signing by the President or CEO of WA or a written notation reflecting acceptance of Offer One or Two." The Success Fee was to be paid "upon, and only if there is a Closing in accordance with the Settlement." *Id*. The aforesaid is, in essence, the entirety of the contract, which did not explicitly restrict Philippine Airlines' ability to enter into a settlement with World Airlines based on other terms, nor guarantee plaintiffs exclusive negotiating rights.

After meeting with World Airways' Chairman, plaintiffs collected the $50,000 initial fee and began negotiating with World Airways. Shortly before the July 11, 1997 deadline, according to plaintiffs, World Airways showed plaintiffs documentation that World Airways had previously opposed Philippine Airlines suggestion of a November 15, 1997 termination date and had insisted on staggered lease termination dates. Plaintiffs continued to negotiate with World Airways and encouraged Philippine Airlines to negotiate directly as well. On July 11, 1997,

"[a]cting in its sole discretion, and without advance notice to Sununu and Frank," Philippine Airlines entered into an Aircraft Services Agreement with World Airways. Compl. ¶ 13 & Ex. 2. The agreement contained staggered dates for the return of each of the four aircraft: November 15, 1997, November 28, 1997, February 19, 1998 and February 28, 1998. PAL Mot. Dismiss Ex. A.[1] It also reduced the cost per block hour under the lease to $5,600 from September 1, 1997 through December 31, 1997, and to $5,300 from January 1, 1998 through the end of the agreement. *Id.* The parties dispute whether the staggered termination dates were agreed to before plaintiffs entered into their agreement with Philippine Airlines, thus rendering performance of the specific contract terms more difficult, if not impossible.

Plaintiffs were never paid the four percent Success Fee because they did not persuade World Airways to accept either of the offers contained in their contract with Philippine Airlines. Plaintiffs allege, however, that the eventual agreement between Philippine Airlines and World Airways achieved "approximately the same [savings] as those that would have been achieved had November 15th been the termination date throughout the period and [had the eventual agreement between Philippine Airlines and World Airways] been structured to match one of the two alternatives set out in [the contract]." Compl. ¶ 14. Plaintiffs contend that the settlement saved Philippine Airlines approximately $12,830,000 assuming the staggered termination dates.

Plaintiffs filed their complaint in 1998. Soon afterwards Philippine Airlines sought

---

[1] Ordinarily, when a defendant submits extrinsic evidence with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must convert that motion into one for summary judgment. *See Savage v. Scales*, 310 F. Supp. 2d 122, 129 (D.D.C. 2004). "[W]here a document is referred to in the complaint and is central to the plaintiff's claim," however, "such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).

reorganization assistance (similar to bankruptcy proceedings) in the Philippines. As a result, all then-pending U.S. litigation was stayed. The stay was recently lifted upon Philippine Airlines' emergence from the reorganization proceedings.

## II. ANALYSIS

This case comes before the Court on Philippine Airlines' motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with regard to all three claims and pursuant to Rule 9(b) with regard to plaintiffs' fraud claim. Under Rule 12(b)(6), a court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged"). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" however, "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). The Court will address each of plaintiffs' three claims in turn.

### A.   Breach of Contract

Plaintiffs allege that Philippine Airlines breached the contract because it failed to pay plaintiffs a Success Fee of four percent of Philippine Airlines' savings based on the negotiated settlement with World Airways. A plaintiff states a claim for breach of contract by alleging "the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation

of the defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 282 (D.D.C. 2005).

Philippine Airlines argues that plaintiffs' breach of contract claim must fail because plaintiffs admit in their complaint that they did not meet the terms required to earn the contingent Success Fee. Plaintiffs' complaint and exhibits demonstrate that plaintiffs did not persuade World Airways to accept either of the two offers laid out in the contract, according to Philippine Airlines. Moreover, Philippine Airlines asserts that the complaint admits that Philippine Airlines, not plaintiffs, was the driving force in negotiating the settlement with World Airways. Philippine Airlines contends that it did not breach the contract because its performance never came due. Plaintiffs respond that they substantially performed the contract, thus triggering Philippine Airlines' obligation to perform, i.e. to pay them the Success Fee. Plaintiffs contend that there is no dispute that they entered into a contract with Philippine Airlines, that they met with World Airways' Chairman and other officials, and that Philippine Airlines achieved a substantial reduction of costs as a result of changes made to the lease terms for the four aircraft.

"Substantial performance" is generally considered to exist when a contracting party has failed to render full performance but any defects in performance are considered minor. *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1013 (D.C. Cir. 1985). In other words, substantial performance occurs, triggering the other party's obligation to perform, where any failure in performance is not material. *See* Restatement (Second) of Contracts § 237. A classic case in which the issue of substantial performance arises is when a contractor builds a home but fails to complete certain tasks as specified in the contract (for example, the brand of pipes used is different than that specified). The court will excuse such a condition specified in the contract

because otherwise a forfeiture would occur. *See Jacob & Youngs v. Kent*, 230 N.Y. 239, 240 (N.Y. 1921) (Cardozo, J.) ("an omission, both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture"). Substantial performance is inapplicable here because the contractual condition that plaintiffs persuade World Airways to accept one of two offers was highly material to the contract - it was, in fact, the entire point of the contract. *See* Pls.' Ex. 1 ("[Plaintiffs] shall be paid a Success Fee . . . if they are able to reach a Settlement . . in accordance with either one of the following two offers . . . ."). The Court cannot excuse plaintiffs' failure to persuade World Airways to accept one of the two listed offers because such a failure is not minor at all.

Both parties analogize to cases regarding contingency fee arrangements between an attorney and a client, but the cases they cite do not answer the question presented here. Philippine Airlines points principally to *King & King Chtd. v. Harbert Int'l*, 436 F. Supp. 2d 3, 5-6 (D.D.C. 2006), in which the court held that an attorney could not recover a contingent fee even though the attorney alleged that his client was responsible for the attorney's failure to meet the contingency, as plaintiffs do here. The holding in that case, however, stresses that the attorney could not recover the contingency fee because the client had not recovered anything as a result of the attorney's substantial performance. *Id*. at 12-13 ("Such a limitation on contractual damages is unavoidable, of course, because substantial performance is merely a substitute for full performance, not a substitute for the occurrence of the condition."). Here, by contrast, Philippine Airlines did allegedly reap savings as a result of plaintiffs' efforts. Plaintiffs point principally to *Kaushiva v. Hutter*, 454 A.2d 1373, 1375 (D.C. 1983), in which the D.C. Court of Appeals held that "an attorney who enters into a contingency fee arrangement with his client, substantially

performs, and then is prevented by his client from completing performance is entitled to the full amount specified in the fee arrangement." In *Kaushiva*, however, the agreement between attorney and client was that the attorney would represent the client in arbitration proceedings, which the attorney did. Here, by contrast, the agreement specified two offers, one of which must be accepted by World Airways in order to obtain the Success Fee; the agreement did not broadly require plaintiffs to negotiate on Philippine Airlines behalf to achieve savings. Thus, neither of these cases decides the issue at hand.

The Court concludes that the contract between plaintiffs and Philippine Airlines clearly set out two alternative terms required to earn the four percent Success Fee and that performance of one of these terms was highly material to the agreement. It is undisputed that plaintiffs did not persuade World Airways to accept either of those terms. Therefore, Philippine Airlines' obligation to pay did not come due and plaintiffs' breach of contract claim must fail.

**B.     Unjust Enrichment**

Plaintiffs bring a claim for unjust enrichment alleging that Philippine Airlines knew when it entered into their contract that the November 15, 1997 termination date was incorrect and that plaintiffs could not possibly secure World Airways' agreement to either of the alternatives. Plaintiffs further allege that Philippine Airlines misrepresented the termination date to them, and that without plaintiffs' intensive efforts, Philippine Airlines would not have been able to recoup the savings from the reduced rates eventually achieved. The elements of a claim for unjust enrichment are: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit." *Rapaport v. U.S. Dep't of Treasury*, 59 F.3d. 212, 217 (D.C.

Cir. 1995).

Philippine Airlines argues that plaintiffs' unjust enrichment claim must be dismissed because a plaintiff may not plead a cause of action for unjust enrichment where there is a written contract between the parties. *See Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 n. 2 (D.C. 1997) ("in order to claim a remedy for unjust enrichment, there must be *no* contract, either express or implied") (*citing Bloomgarden v. Coyer*, 479 F.3d 201, 210 (D.C. Cir. 1973)). This is true; however, to preclude a claim for unjust enrichment, a contract must be valid. *See, e.g.*, *Shaw v. Marriott Int'l, Inc.*, 570 F. Supp. 2d 78, 89 (D.D.C. 2008) ("a party to a *valid* contract cannot bring a claim for unjust enrichment related to the subject matter of an express contract between the parties") (emphasis added). Here, plaintiffs state sufficient facts to support an allegation that the contract between plaintiffs and Philippine Airlines was invalid due to fraud. *See* Compl. ¶¶ 7, 28-32. At the motion to dismiss stage, this is enough. "Pleading in the alternative is permissible under the Federal Rules of Civil Procedure, and a court must look beyond how a 'complaint is styled' to determine if facts support any claim for relief under a theory of breach of contract or unjust enrichment." *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 n. 6 (D.D.C. 2007); *see also* Fed. R. Civ. P. 8(e)(2) (permitting pleading in the alternative). Therefore, the Court will not dismiss plaintiffs' claims for unjust enrichment at this stage of the litigation.

**C.     Fraud**

Plaintiffs allege that Philippine Airlines intentionally falsely represented to them, prior to their agreement and until July 11, 1997, that the lease of all four aircraft would end on November 15, 1997, and concealed from them the staggered termination deadlines. Thus, according to

plaintiffs, Philippine Airlines knew that World Airways would not accept either of the two offers outlined in their contract. At common law, the requisite elements of fraud are: (1) "a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) an action that is taken in reliance upon the representation." *Daisley v. Riggs Banks, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005).

Philippine Airlines argues that plaintiffs' fraud claim must be dismissed for three reasons. First, Philippine Airlines argues that its statements that the leases terminated on November 15, 2007 were true and therefore do not support a claim for fraud. Philippine Airlines contends that the record is clear that the initial agreement between Philippine Airlines and World Airways contained an expiration date of November 15, 2007 and that any alleged verbal agreement would be legally ineffective because their initial agreement with World Airways required that all amendments be in writing and executed by both parties. Second, Philippine Airlines asserts that plaintiffs have alleged fraud by omission (i.e., that Philippine Airlines failed to tell them that the termination dates had changed) and that Philippine Airlines was under no legal duty to disclose any alleged agreement to stagger the lease termination dates. Third, Philippine Airlines argues that plaintiffs have failed to state a claim for fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b).

The first two arguments may be easily dispatched. Plaintiffs' complaint alleges that Philippine Airlines "represented to them that the November 15, 1997, date therein, was the lease termination date" even though "this termination date had been changed to reflect the different dates on which each aircraft had been delivered . . . ." Compl. ¶ 7. At the motion to dismiss stage, the court must accept the plaintiffs' allegations as true. *See Twombly*, 550 U.S. at 555.

Philippine Airlines does not show that plaintiffs' allegation cannot be true. Moreover, plaintiffs do not allege fraud by omission, but allege that Philippine Airlines made an affirmative misrepresentation when it stated that the lease termination deadline was November 15, 1997 for all four aircraft.

The Court next turns to Philippine Airlines' argument that plaintiffs did not state their fraud claim with sufficient particularity. Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Under Rule 9(b), the court requires "the pleader . . . [to] state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal*, 16 F.3d at 1278. Rule 9(b)'s particularity requirement serves several purposes, including discouraging nuisance suits, safeguarding potential defendants from frivolous accusations of moral turpitude, and guaranteeing all defendants sufficient information to allow for preparation of a response. *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

Here, plaintiffs allege that "at the time [Philippine Airlines] sent the Agreement to Sununu and Frank for their signatures," Philippine Airlines "represented to them that the November 15, 1997, date therein [] was the lease termination date." Compl. ¶ 7; *see also* Compl. ¶ 28 ("Defendant [Philippine Airlines] intentionally falsely represented to Sununu and Frank, prior to June 27, 1997 and thereafter until July 11, 1997, that the lease of all four aircraft would end on November 15, 1997"). Plaintiffs further allege that as a consequence of the fraud, Philippine Airlines "obtain[ed] Sununu and Frank's valuable services, without actually having to

pay [the] Success Fee." *Id.* ¶ 30.  The Court concludes that plaintiffs have pled their fraud claim with sufficient particularity by stating what was misrepresented, when, in what context, and the effect of the misrepresentation, *see Kowal*, 16 F.3d at 1278, and have given defendants sufficient information to allow for preparation of a response, *see U.S. ex rel. Williams*, 389 F.3d at 1256. Therefore, the Court will not dismiss plaintiffs' fraud claim.

### III.  CONCLUSION

For the foregoing reasons, it is this 31st day of July 2009, hereby

**ORDERED** that defendant's motion to dismiss [#14] is GRANTED with respect to plaintiffs' breach of contract claim; and it is further

**ORDERED** that defendant's motion to dismiss [#14] is otherwise DENIED.

Henry H. Kennedy, Jr.<br>
United States District Judge