UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN H. SUNUNU and VICTOR H. FRANK, Jr.,

        Plaintiffs,

v.

PHILIPPINE AIRLINES, INC.,

        Defendant.

Civil Action No. 98-1192 (HHK/JMF)

MEMORANDUM OPINION

This case was referred to me for resolution of Defendant's Motion to Strike Expert [#47] ("Defs. Mot."). For the reasons stated below, the motion will be denied without prejudice.

BACKGROUND

Plaintiffs are John H. Sununu, former Governor of New Hampshire and former Chief of Staff to President Bush, and Victor H. Frank, Jr., former United States Ambassador to the Asian Development Bank. Defs. Mot. at 3. Defendant is Philippine Airlines, Inc. ("PAL"). Id. at 1. In 1997, defendant hired plaintiffs to assist in the renegotiation of an aircraft lease with World Airways. Id. at 2. Although the renegotiation was ultimately successful, plaintiffs claim that defendant breached the terms of their contract by failing to pay them a "success fee." Id. at 1. Plaintiffs therefore

sued defendant for 1) breach of contract, 2) unjust enrichment, and 3) fraud. Id. at 2. On July 31, 2009, the Court dismissed plaintiff's breach of contract claim on the grounds that plaintiffs failed to satisfy the terms of the agreement required in order to merit payment of a success fee. Memorandum Opinion and Order [#19] at 4-7. Thus, the only remaining claims are those for unjust enrichment and fraud. Id. at 8-11.

## DISCUSSION

I.  The Parties' Positions

In support of their claim of unjust enrichment, plaintiffs claim that PAL "caused Sununu and Frank to use their prestige, reputations and personal contacts to successfully persuade World Airways to lower the lease rates" and that as a result, "PAL has been unjustly enriched by receiving the benefits of the lower rates . . . without having to pay either the fair and reasonable rate (10%) normally paid to third parties for achieving such savings, or the 4% fee set out in the Agreement." Complaint [#1] ("Compl.") ¶¶ 22, 24. Similar claims are made with respect to plaintiffs' claim of fraud. Compl. ¶ 27.

In Plaintiffs' Rule 26(a)(2) Expert Disclosures, plaintiffs indicated that they may designate Sununu as a hybrid fact/expert witness. Defs. Mot., Exhibit A at 2-3. Plaintiffs defined the scope of Sununu's potential testimony to include "industry standard fee arrangements for business consulting services, the reasonable value of the business services furnished to [PAL], the standard fees charged for services by former White House Chiefs of Staff to advance interests of U.S. businesses, and the value of the political and business capital expended on behalf of [PAL]." Id. at 2. Plaintiffs later added that Sununu's opinions are based on his "respective knowledge and personal

2

experience in business consulting, both domestically and abroad, including representation and negotiations of large-scale business deals" as well as "his knowledge and personal experience as a former Chief of Staff to the President of the United States and communications with former White House Chiefs of Staff." Id. at 4. Finally, plaintiffs noted that Sununu "was not retained or specially employed to provide expert testimony in this case" and therefore was "not required to prepare a written report under Federal Rule of Civil Procedure 26(a)(2)(B)." Id.

In the motion currently before the Court, defendant seeks to strike Sununu as an expert witness. In support of its motion, defendant makes the following three arguments. First, defendant claims that "Sununu cannot hold himself out as an expert witness and then refuse to disclose the basis for the opinions he intends to introduce into evidence." Defs. Mot. at 8. Second, defendant argues that plaintiffs either have to file a Rule 26(a)(2)(B) expert report for Sununu or, at a minimum, allow defendant to explore the basis of Sununu's opinions, whether it be through deposition testimony or responses to interrogatories. Id. at 11. Finally, defendant claims that because defendant offered to enter into a protective order, plaintiffs cannot refuse to provide the requested information on the grounds that it is confidential. Id. at 12-13.

II.   Analysis

As noted above, plaintiffs' breach of contract claim was previously dismissed by the Court and the only remaining claims are those for unjust enrichment and fraud. The gravamen of both of these claims is that PAL was unjustly enriched because it did not have to pay the rates normally charged or the 4% contractual rate for the services it

received. In order to support these claims, plaintiffs must, as they concede, provide evidence relating to 1) industry standard fee arrangements for business consulting services, 2) the reasonable value of the services provided to defendant, 3) standard fees charged by former White House Chiefs of Staff, and 4) the value of the capital (political and business) expended on behalf of defendant. Defs. Mot., Exhibit A at 2. As plaintiffs have chosen to do this through Sununu's testimony, it is clear that at least one of the purposes of Sununu's testimony is to offer his opinion. See Defs. Mot. at Exhibit A. Because defendant does not quarrel with the fact that Sununu was not "retained or specifically employed to provide expert testimony," or that his duties as a consultant do not "regularly involve giving expert testimony," the issue is under what circumstances Sununu may, as either a hybrid/fact witness or simply a fact witness, provide opinion testimony.

With respect to expert witnesses, Rule 26 of the Federal Rules of Civil Procedure states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence." Fed. R. Civ. P. 26(a)(2)(A). Rule 26 further requires that the "disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Significantly, "'[b]y distinguishing between the identification of an expert whose opinions may be presented at trial, and the requirement of an expert report, Rule 26(b)(4)(A) reiterates that Rule 26(a)(2)(A) applies to all testifying experts,' and thus even non-retained experts are subject to deposition as fact

4

witnesses, if not the reporting requirements of Rule 26(a)(2)(B)." Beechgrove Redevelopment, LLC v. Carter & Sons Plumbing, Heating and Air-Conditioning, Inc., No. 07-CIV-8446, 2009 WL 981724, at *4 (E.D. La. 2009) (quoting Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 883 n.4 (5th Cir. 2004)). In addition, speaking to subsection (b)(4)(A), the Advisory Committee noted that "the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to the transactions or occurrences that are part of the subject matter of the lawsuit" and that "[s]uch an expert should be treated as an ordinary witness." Advisory Committee's note to the 1970 Amendment.

As an "ordinary witness," therefore, Sununu is subject to the same discovery as all other witnesses, including interrogatories and depositions. To allow Sununu to give opinion testimony without permitting defendant to explore the basis for those opinions would be to ignore the application of Rule 26 as to not just expert witnesses but as to all witnesses. This is especially true given the broad scope of permissible discovery under Rule 26, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that the "[r]elevant evidence need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In order to prove that defendant was unjustly enriched and/or committed fraud, plaintiffs have to establish that 10% is the "fair and reasonable rate . . . normally paid to third parties" for achieving the type of savings they secured for PAL. In order to defend

against plaintiffs' claims, defendant has to establish that 10% is not a fair and reasonable rate, and that it is not the rate normally charged third parties. The next issue, therefore, is whether plaintiffs, through Sununu, have provided defendant with sufficiently detailed information to do so.

Plaintiffs cite to numerous sections of Sununu's depositions in support of their contention that sufficient information was provided defendant. See, e.g., Plains. Opp. at 19. In each of the sections, however, the information provided does not even come close to giving defendant a true understanding of the way in which fee arrangements are derived. For example, in his May 19, 2010 deposition, Sununu identified some of the variables he considered in determining an appropriate fee:

> Q  Okay. And I also believe that you testified that that retainer generally varies from 20 to $40,000 a month?
> A  That's the usual.
> Q  What about in 1997, was that the amount you charged?
> A  Yes.
> Q  And what were the factors that you considered in determining whether to charge, you know, 20,000 or 40,000 or somewhere in between?
> A  How intense an effort it required, in terms of time, whether there was a lot of international travel, whether we had to do a lot of research work. The level of work involved, the tenure of the contract. If - - if a client would come in and make a multiyear commitment, they would generally get a little lower rate than a client who only wants to do a one-year commitment.

Plains. Opp., Exhibit 1 at 365-66.

Later in the deposition, however, Sununu refused to provide any of the details relating to his firm's other contracts:

6

| | | |
|---|---|---|
| Q | | . . . What I'm asking is are you expressing an expert opinion that you - - your - - the value of your services was a 7 percent success fee on success fees that you have been paid in the past - - |
| A | | Yes. |
| Q | | - - by other clients? |
| A | | Yes. This is consistent with work we have done for other clients. |
| Q | | Okay. What other client? |
| A | | I'm not going to tell you. |
| Q | | What kind of work have you done for the other clients? |
| A | | We have - - we have done a significant solution [sic] of a conflict that had a value in the - - almost $100 million and received a success fee of 10 percent on that. |
| Q | | What kind of services did you provide in that case? |
| A | | We resolved a 12-year dispute and had our client paid the amount [sic] - - very significant amount. |
| Q | | What was the nature of the dispute? |
| A | | I'm not going to tell you. |

Id. at 376-77.

By refusing to provide defendant with information about, for example, the amount of effort other contracts required, the amount of time needed, the amount of international travel involved, whether a lot of research was required, and the tenure of the contract, all factors identified by Sununu previously in his deposition, he is refusing to provide defendant with clearly relevant information. See Fed. R. Evid. 401 ("evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Without knowing any of the specifics of plaintiffs' other contracts, defendant cannot possibly assess and then potentially dispute plaintiffs' claims.

7

Additionally, the answer Sununu gave – "I am not going to tell you" – was improper. Confronted with an objectionable question, a witness must either answer the question or claim a privilege, with the latter being the only permissible basis for refusing to answer a question, unless he intends to file a motion under Federal Rule of Civil Procedure 30(d)(3). Fed. R. Civ. P. 30(c)(2). In other words, Sununu could have moved for a protective order prior to his deposition if he had a justifiable fear that defendant's questions would invade a privilege recognized in law (Fed. R. Civ. P. 26(c)(1)(D)), or he could have claimed a specific and legitimate privilege and explained at the deposition the legal basis for his claim. Answering, "I am not going to tell you," is a response that the Federal Rules do not countenance.

There is a simple solution. Sununu's deposition will be re-opened and he may be asked the questions he refused to answer in his first deposition. Any objection based on relevance may be made, but Sununu must answer the question, subject to that objection. See Fed. R. Civ. 30(c)(2). He may not object, however, on the grounds of privilege; the time for his moving for a protective order has come and gone. Instead, by the attached order, I will order the transcript sealed and direct all participants in the deposition and all persons in attendance at the deposition not to disclose, disseminate, or transmit anything Sununu says.

The order I will issue is without prejudice to defendant's motion being renewed if Sununu still refuses to answer the questions posed.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE